IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:08-CV-13-MU

| | |
|---|---|
| DANNY RAY BRIDGES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| CHAD MURRAY, et. al., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on the Rutherford County Sheriff's Motion to Quash Subpoena filed April 20, 2009 (Doc. No. 53); Plaintiff's Response in Opposition filed May 1, 2009 (Doc. No. 56); and Defendant's Reply filed May 8, 2009 (Doc. No. 57.) For the reasons stated herein, the Motion to Quash is granted in part and denied in part..

On January 7, 2008 Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that on January 9, 2005 he was arrested by Rutherford County Sheriff's Deputies Chad Murray and Kelly Aldridge and that during such arrest both deputies beat him in the face with a heavy flashlight or a baton and lifted him off the ground by his handcuffs, causing him actual injuries including permanent disfigurement and permanent disability. Plaintiff also named former Rutherford County Sheriff Keith Byers alleging that Mr. Byers failed to adequately train and supervise his employees.[1] On October 2, 2008, this Court granted Plaintiff's Motion for the

---

[1] Mr. Byers was dismissed from this suit for failure to state a claim for relief by Order dated January 14, 2008 (Doc. No. 2.) Furthermore, the Court notes, Mr. Byers was not the sheriff at the time of the alleged use of excessive force.

1

Appointment of Counsel and appointed Mayer Brown Rowe & Maw to represent Plaintiff. Since that time, Plaintiff has been deposed and the parties are in the process of conducting discovery. Plaintiff has also had an MRI of his shoulder and been seen by an orthopedist related to his claim. On March 24, 2009 the undersigned granted Defendant Murray's Motion for Summary Judgment and dismissed him from the case (Doc. No. 52.) Therefore the only claim that remains is whether Defendant Aldridge used excessive force against the Plaintiff.

On April 15, 2009, Plaintiff's counsel issued a subpoena directed to the Rutherford County Sheriff's Office for documents related to Defendant Aldridge's past use of force and documents which can be described as Monell[2] discovery including detailed information about training, supervision, discipline, and policy issues affecting not only Defendant Aldridge, but the Sheriff's Office as a whole over a ten year period of time. Defendant's counsel, who is also counsel to the Rutherford County Sheriff's Office, filed the instant motion arguing that the documents sought in the subpoena are not relevant because there is not currently a Monell claim stated in the Complaint and responding to the subpoena would be unduly burdensome on the Rutherford County Sheriff's Office. The subpoena included eighteen specific requests which include the following:

1. All documents relating to any incident in which Aldridge has used any level of force on any persons in the course of his duties as a deputy for the RCSO.

---

[2] In Monell, the Supreme Court held that municipalities and other local governments nay be held liable under 42 U.S.C. § 1983 for any deprivation of constitutional rights caused by an official policy or governmental custom and usage not formally approved or authorized. Monell v. Dep't of Social Services of New York, 436 U.S. 658 (1978).

2. All documents, including arrest files, booking photos and other documents in your possession relating to the arrests of the individuals whom Aldridge, in the course of his duties, struck in the face with a close fist. Include, without limitation, any and all documents relating to the following incidents, as described by Aldridge:

    a. "The one incident in 2006 was a vehicle chase that was not initiated by myself, and I actually forgot who the charging officer was, but I did type up a statement of the events that occurred and turned them into Major David Philberg at that time."

    b. An incident in 2003 that "happened on Drake Circle down in Mooresboro. I cannot remember his name. I would have to look back through my files. I don't even know if I've still got it."

3. All documents relating to the incident in which Aldridge struck Carl Womack.

4. All documents evidencing any criminal charges against Carl Womack or the disposition of those charges.

5. Documents that identify any witnesses to the incidents when Aldridge, in the course of his duties, struck an individual in the face with a closed fist.

6. All documents, including arrest files, booking photos and other documents in your possession relating to the arrests of Chris Towery, Billy Shane or any other individuals whom Aldridge, in the course of his duties, struck with a flashlight.

7. All documents, including arrest files, booking photos and other documents in your possession relating to the arrests of Prima Benson and Willie Wright by Aldridge.

8. All documents evidencing any charges by Aldridge against any person for assault on a police officer or resisting arrest.

9. All documents that refer or relate to or constitute or comprise charges against Aldridge in connection with a fist-fight he had when he was about 17 years of age.

10. All documents that refer or relate to or constitute or comprise any screening or evaluation of Aldridge the RCSO performed in connection with hiring Aldridge as a law enforcement officer.

11. All documents that refer or relate to or constitute or comprise the screening process used by the RCSO from 1995 through 2005 to screen new hires as deputies for the RCSO.

12. Documents that identify Aldridge's supervisors while he has been employed as a deputy with the Rutherford County Sheriff's Department.

15. [3] All documents that relate to complaints, formal or informal, about the conduct of any deputy of the Rutherford County Sheriff from 1996 through 2006.

16. All documents that refer or relate to or constitute or comprise training curricula used by the RSCO from 2000 through 2005 to train its deputies on use of force.

17. All documents that refer or relate to, constitute or comprise or document the training of any RCSO deputies on Sheriff's Office, Policy 3.15 (Oct 1996).

18. All documents that refer or relate to, constitute or comprise or document the training of Aldridge on Sheriff's Office, Policy 3.15 (Oct 1996).

## **Analysis**

Rule 26(b) provides that "parties may obtain discovery regarding any nonpriviledged matter that is relevant to any party's claim or defense . . . . " The Rule goes on to state that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved

---

[3] Documents request 13 and 14 have been withdrawn by Plaintiff's counsel. (See Doc. No. 56 at 10, n. 6.)

in the action. As both parties correctly note, "a subpoena duces tecum is subject to the same relevancy considerations applicable to discovery in general." Castle v. Jallah, 142 F,R,D, 618, 620 (E.D. Va. 1992). Here, the only claim remaining in Plaintiff's Complaint is Defendant Aldridge's alleged use of force against Plaintiff. Plaintiff asserts that "documents relating to the RCSO's training and supervision of Aldridge and its other deputies and screening candidates . . . are relevant to potential claims under Monell and its progeny." (Opp at 7.) The 2000 amendment to the Federal Rules of Civil Procedure substantially narrowed the rule's scope as it now focuses discovery on the actual claims and defenses at issue in the case. Hill v. Motel 6, 205 F.R.D. 490, 492 (S.D. Ohio 2001). Therefore, the Court finds that the documents related to Monell discovery are not relevant to any stated claim or defense.

Next, Rule 26 also allows the Court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action. While the Court appreciates Plaintiff's position that the requested discovery could lead to a possible Monell claim, the Court declines to order such discovery as a motion to amend a Monell claim at this junction, would be time barred and would not relate back to the date Plaintiff's filed his Complaint.[4] Therefore, the

---

[4] Plaintiff's statute of limitations ran on his claims no later than January 9, 2008, three years after the date of his arrest. Plaintiff delayed filing his Complaint until January 7, 2008. Although Plaintiff argues that the Rutherford County Sheriff's Office was previously a party to this case, that is not so. Plaintiff named former Sheriff Phillip Byers (mistakenly sued as Keith Byers.) Mr. Byers was not the Sheriff of Rutherford County at the time Plaintiff was allegedly assaulted or at the time Aldridge was hired. Plaintiff filed his Complaint very close to the three-year statute of limitations and named a Defendant who was not an appropriate party. Such claim against a former sheriff does not provide adequate notice to the person who was the sheriff of Rutherford County at the time of the alleged assault and/or at the time Defendant was hired.

motion to quash as to the Monell discovery which includes request 9 10, 11, 12, 15, 16, 17, and 18[5] is GRANTED.

**Remaining Discovery**

The Rutherford County Sheriff's Office objects to the remaining discovery requests because compliance would subject the Sheriff's Office to undue burden. The Court has reviewed the remaining document requests and concludes that such documents requests are relevant to Plaintiff's claim and are therefore discoverable. Indeed, with respect to document requests 3,4, 6, and 7 the declaration from Jeff Buchanan, Chief Deputy of RCSO indicates that Mr. Buchanan has not checked to see if the Sheriff's Office has any documents responsive to these requests. The Court instructs Mr. Buchanan to do so, and if such responsive documents are located, they should be produced promptly.

Request 1 seeks all documents relating to any use of force by the Defendant throughout his career as a deputy. According to Chief Deputy Buchanan's declaration, use of force reports generated since Sheriff Conner took office in December 2006 would be fairly easy to locate. As such, any such report by Defendant should be produced promptly. However, according to Chief Deputy's Buchanan's declaration, reports generated prior to December 2006 were not retained in any kind of central storage location or categorized by deputy's name. Therefore, beyond what has already been produced, any further search, according to Chief Deputy Buchanan, would be unduly time consuming and labor intensive. The Court agrees and directs Chief Deputy Buchanan to confirm that he has produced any reports generated since 2006. The Rutherford

---

[5] Plaintiff's counsel indicated that these specific requests are directed at discovering evidence relevant to potential claims under Monell.

County Sheriff's Office is not required to manually comb through boxes of documents to locate any other documents potentially responsive to this request based on its representation that such task would be unduly time consuming and labor intensive.

Requests 2 and 5 seek all documents relating to the arrests of any other persons Aldridge ever struck with his fist. In his deposition, Defendant Aldridge recalled two other such incidents, but could not recall the arrestees' names. According to Chief Deputy Buchanan, records are maintained by the arrestee's name, not the deputy's name. Therefore, there is no way, without a manual search of all the hard copy records, to locate such records. The Court is satisfied, based on Chief Deputy Buchanan's representation, that such a task would be unduly burdensome. Therefore, with respect to these requests, the Motion to Quash is Granted.

Request 8 seeks all documents evidencing any charges by Aldridge against any person for assault on a police officer or resisting arrest. According to Chief Deputy Buchanan's declaration, compliance with this request would be unduly burdensome as arrest records are maintained by the arrestee's name, and not by the deputy's name or by the type of charges. According to Buchanan, the requested information could not be obtained without conducted a manual hand search of the arrest files for every person arrested by the RCSO going back to 1997. The Court will not require this kind of search as it is too burdensome on the RCSO. Therefore, with respect to request 8, the Motion to Quash is Granted.

**IS IT, THEREFORE, ORDERED** that the Motion to Quash Subpoena is GRANTED in part and DENIED in part consistent with this Order (Doc. No. 53.)

**SO ORDERED**

Signed: May 15, 2009

Graham C. Mullen
United States District Judge